## Hawk *versus* Jones.

1. Though the Act of 5th April, 1842, authorizes a writ of error on a judgment *quod partitio fiat*, yet where such a judgment has been entered by confession, and there is nothing on the record to show that it is erroneous, a writ of error will not lie to the subsequent action of the Court in the case till a final judgment has been rendered:

Therefore, where the premises were divided into two parts and one part was taken, but the other part was not taken or disposed of by sale or otherwise, it was *Held* that a writ of error would not lie to the proceeding.

2. There is no provision for removing to this Court the evidence as to the right of choice or the propriety of the allotment by the Court in an action of partition.

3. In reviewing proceedings in partition the examination of this Court is to be confined to the record proper, or to such portion of the evidence as has been made part of it by bill of exceptions.

ERROR to the Common Pleas of *Armstrong county.*

[Hawk *v.* Jones.]

This was an amicable action of partition, in favor of Eliza Jones and others, heirs of Thomas Smith, deceased, *v.* George Hawk, entered into on 2d August, 1852, and, on the same day, judgment *quod partitio fiat* was confessed by defendant's attorney. A writ *de partitione facienda* was issued to September Term, 1852, and the real estate was divided by the inquest into *two* parts, marked A. and B., in the schedule annexed, each containing 189 acres and 138 perches.

20th September, 1852. Inquisition confirmed by the Court, and rule granted on all persons interested, to appear at the next term, and accept or refuse the premises. Rule returned, served on George Hawk, the defendant.

On the return day of the rule, the plaintiffs' attorney claimed for them the priority of choice of the purparts, on the ground that plaintiffs held the elder title. This was denied by the defendant, who alleged that the title had passed out of the plaintiffs, and become vested in John L. Leech, by articles of agreement dated 27th April, 1852, and that Leech was the real party in this suit. Thomas Hickenlooper purchased from the plaintiffs the undivided one-half part of the premises, by an article dated 16th January, 1825, and he conveyed his interest to the defendant by deed, dated February 23, 1844. The interest of Hawk was sold at sheriff's sale, at June Term, 1849, for $1150, to John L. Leech, who, by an arrangement between Hawk and Leech, purchased it in trust, and for the benefit of Hawk; and, in pursuance of this arrangement, entered into an article of agreement with Alexander Sheldon on the 18th Dec., 1844, (the time when the money was first paid to the sheriff, and the sheriff's deed made to Leech), to convey the land to Sheldon, on being paid $1948.10, to wit, $595.32 in hand, $676.39 on the 18th January, 1850, and $676.39 on the 18th December, 1851. It was agreed between Hawk and Sheldon, at the same time, that Sheldon should hold the property for the use of Hawk, and convey it to Hawk, or to any other person, as Hawk should direct. The object of all the parties was to save the land for Hawk. Sheldon was to have no interest in the land, but to hold it until he was reimbursed what he might advance on it. Hawk got a lien against his land satisfied, in order to save Leech from paying that amount of money to the sheriff; and Hawk and Sheldon raised the hand-money on the article, which also was paid to the sheriff. Hawk afterwards paid Sheldon the amount advanced by him on the contract, which was but small, the most of the money having been paid by Hawk. Hawk and Sheldon having had some misunderstanding, Sheldon, at the solicitation of Leech, and against the wishes of Hawk, transferred and surrendered the article to Leech on the 5th July, 1851. Leech immediately brought an ejectment against Hawk for the land, which was referred to arbitrators, who filed their award on 24th

September, 1851, in favor of Leech, for the land described in the writ, to be released on payment of $326.52, on or before 23d June next. On 18th December, 1851, Leech receipted to Hawk, on the back of the article, for $676.39, in full of the last payment. On 23d June, 1852, John L. Leech receipted to Hawk, by Cochran and Gosser, on the award in ejectment, for $357.41, the debt, interest, and costs in full; and on same day conveyed all of his interest in the land to George Hawk. On the 17th December, 1851, Hawk gave Cochran and Gosser a mortgage on the land, conditioned for the payment of $1669.70; and also, on the same day, entered into an article of agreement with Cochran and Gosser, that if they would furnish money to pay Leech, and satisfy the claim of Henry L. Patterson, so as to save the land for Hawk, that the deed should be made by John L. Leech to them, who were to hold the land until they were reimbursed the money advanced by them to Hawk. Cochran and Gosser advanced the money, in pursuance of this arrangement, as soon as the deed was made by Leech to Hawk. Hawk immediately, on the same day, conveyed to Cochran and Gosser.

On 24th September, 1853, the Court decreed to the plaintiffs the priority of election or choice of parts; whereupon, by attorneys, the part marked B was elected, and was awarded to the plaintiffs. No order was made as to the other purpart.

It was assigned for error that the Court erred in awarding to the plaintiffs the priority of choice, and decreeing to them purpart marked B. 2. In not decreeing the purpart marked A. to either party. 3. In not opening the judgment of *quod partitio fiat*, and setting aside the whole proceedings.

It did not, however, appear from the paper-book that any application had been made to the Court below to open the judgment of *quod partitio fiat*.

*Phelps*, for plaintiff in error.—It was alleged that the right of priority of election was in Hawk. That the attorney in fact had not power to elect for some of the legal plaintiffs; that the Court should have awarded the other part to Hawk, or granted a rule to show cause why it should not be sold; and, thirdly, that there was no evidence submitted to the Court of authority in the attorney-at-law to enter the action, and that, if so, the whole proceeding was void: 5 *Harris* 89, Bellas v. Dewart. Leech should have been made a party to the suit; and so should Cochran and Gosser.

*Lee*, contrâ.—Leech was not a party, but acquiesces; Cochran and Gosser, if mere lien-creditors, should not be parties: 2 *Pa. Rep.* 124. 2. If the decree of the Court be defective because the other part was not assigned to Hawk, or directed to be sold,

this writ of error will not lie, as it lies only to a final judgment, except to the judgment of *quod partitio fiat.* The Court cannot make an assignment until election, and Hawk made none; and no sale can be ordered unless upon application. The proceedings may be sent back for informality: Act of 16th June, 1836, § 1, *Laws,* p. 785; 10 *Barr* 169; 7 *Barr* 371; 1 *Harris* 361; *Id.* 117; 9 *Barr* 184, 230; 2 *Jones* 44; 3 *Harris* 313. 3. It does not appear from the paper-book that there was any application to the Court to open the judgment of *quod partitio fiat.* It is too late to call for a power of attorney.

The opinion of the Court was delivered by

LEWIS, J.—The 2d section of the Act of 11th April, 1799, gave the Court power, in the action of partition, in case "none of the parties agreed to take the lands and tenements at the appraisement," to order the same to be sold "at the instance of the demandant:" *Dunlop* 208. By the Act of 5th May, 1841, the Court must allow the holders of the titles to take the same or *parts thereof,* consecutively, according to the dates of their respective titles, legal or equitable; and if the party entitled to a choice do not appear, or shall refuse the same, it shall be offered to the next in succession, according to the rule of seniority of title. If a particular purpart or portion shall remain undisposed of, after all parties have had an opportunity to take it, such part falls under the rule prescribed in the Act of 1799, and may be sold by order of the Court. The Acts of Assembly regulating writs of partition, must be liberally construed to effectuate the intention of the legislature, and to promote the convenience of the parties, so that they may enjoy their rights in severalty. This is the only perfect enjoyment of the right of property, and it tends more than any other to promote the interests of the parties and the general welfare of the country. The Court awarded purpart B. to the party electing to take it; but the other part has not been disposed of. It does not appear to have been decreed to any one, or to have been sold. No final judgment in the writ of partition has been rendered. If the demandant failed to ask for further proceedings, the defendant below had the right to do so. So that there is no necessity to entertain a writ of error until the cause has been finally ended in the Court of original jurisdiction. It is true, that by Act of 5th April, 1842, a writ of error is given upon the judgment *quod partitio fiat,* for the purpose of examining it; but that judgment in this case appears to have been entered by confession, and there is nothing on the record to show that it is erroneous. Nor is there anything to show that the Court erred in awarding the right of choice to the plaintiffs. There is no provision for removing the evidence in such a case, and we do not, at present, see how we can re-examine the question without it. The

[Hawk v. Jones.]

first assignment of error is therefore not the subject of review here. The second and third are not sustained by the record as copied in the paper-book. The record does not show that any other persons are interested than those who have agreed to the amicable action and to the confession of judgment that partition be made. Nor does it show that any application was made to open the judgment. In reviewing these proceedings our examination must be confined to the record *proper*, or to such portions of the evidence as may be made a part of the record by bill of exceptions. The second assignment of error, instead of showing ground for reversing the judgment, merely shows that no final judgment has been entered, and that the plaintiff in error was premature in taking out his writ.

Judgment *quod partitio fiat* affirmed and *procedendo* awarded.